IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOSEPH CAMPO FIORE,<br><br>    Plaintiff,<br><br>vs.<br><br>RUSSELL SMITH,<br><br>    Defendant. | No. 3:09-cv-359<br><br>(Campbell/Shirley) |

## ORDER

Plaintiff Joseph Campo Fiore, a tractor-trailer truck driver, filed this civil rights suit under 42 U.S.C. § 1983 against Sergeant Russell Smith who was working for the Tennessee Highway Patrol at the time he arrested Mr. Fiore for leaving the scene of an accident.[1] Mr. Fiore asserts that the arrest and related events violated his Fourth Amendment right to be free from unlawful seizures because the arrest was not supported by probable cause. He also brings state law claims for intentional interference with business relations, false arrest, and false imprisonment.

Sergeant Smith has filed a motion for summary judgment in which he raises the defense of qualified immunity. He also contends that the undisputed facts in the record fail to establish necessary elements of the state law claims.

Based on a review of the record, the court finds that the undisputed material facts show that Sergeant Smith had probable cause to arrest Mr. Fiore, so no constitutional violation

---

[1]At the time of the arrest, Sergeant Smith was a trooper with the Tennessee Highway Patrol. He has since been promoted and so the court refers to him as Sergeant Smith.

occurred and Sergeant Smith is entitled to qualified immunity. In addition Mr. Fiore's state law claims fail as a matter of law. Accordingly, the court GRANTS the Motion for Summary Judgment.

## FACTUAL BACKGROUND[2]

On August 16, 2008, Sergeant (then Trooper) Russell Smith was sent by a Tennessee Highway Patrol (THP) dispatch operator to the scene of an accident to investigate a collision between a tractor-trailer truck and a passenger car on Interstate 40 in Loudon County, Tennessee. At the time, the highway was under construction, and lanes were reduced, but a shoulder area remained.

When Sergeant Smith arrived at the scene of the accident, he saw a passenger car in the shoulder area of the highway, but no truck. He noted that the rear-end of the car had been damaged, and he estimated that the cost of the damage would exceed $400.00.[3] The driver of the car, Olivia Caldwell, told the trooper that a tractor-trailer truck had hit the back of her car. According to Ms. Caldwell, the truck driver—Plaintiff Joseph Campo Fiore— had stopped and given his name, address and cellular phone number to her. But, despite Ms. Caldwell's request for more information, Mr. Fiore did not provide his truck's registration or insurance information, and he did not display his driver's license. Then he drove away. According to Sergeant Smith, in his experience, leaving an accident scene and failing to provide as much information as

---

[2]The court finds that there are no genuine disputes of material fact, and the parties do not argue otherwise. Accordingly, the facts set forth in this order's factual background section are based on information set forth in the parties' pleadings and supporting documents.

[3]The $400.00 figure is relevant because the Tennessee statute creating the crime of failure to remain at the scene of an accident uses that threshold figure to trigger different obligations of a driver involved in an accident. See Tenn. Code Ann. § 55-10-102.

2

possible (as most truck drivers do) was suspicious behavior.

Using the information Ms. Caldwell gave him, Sergeant Smith called the dispatch operator, who contacted the driver on the radio and told him to pull over. Mr. Fiore, who is a resident of the state of Virginia with a Virginia driver's license, pulled over a couple of miles from the accident scene. After Sergeant Smith conducted his investigation at the site of the accident, he pursued the truck.

Meanwhile, according to Mr. Fiore, he waited for forty-five minutes. At that point, when no trooper came, he decided to continue on his way. But when Sergeant Smith caught up with Mr. Fiore about three miles from the accident scene and turned on his emergency lights, Mr. Fiore pulled over to the shoulder of an I-40 ramp.

Sergeant Smith began his investigation of Mr. Fiore by asking him why he left the scene of the accident. Mr. Fiore admitted that he left the scene, but he insisted that no accident had occurred and there was no damage to the car. Mr. Fiore's statement completely contradicted what Sergeant Smith observed at the accident scene.[4]

At that point, Sergeant Smith began a "Level 3 Inspection" (a document inspection). Sergeant Smith had the right, and obligation, under THP General Orders, to conduct a Level 3 Inspection—that is, to inspect the documents relating to operation of a commercial truck such as the one Mr. Fiore was driving—if the commercial truck driver has been stopped for a traffic

---

[4]Mr. Fiore, in his pleadings, does not assert that no accident occurred. (See Pl.'s Opp'n Mem. (Docket No. 36) at 1 (stating, in the "FACTS" section, that Mr. Fiore "was involved in a property damage accident" and that he "called in to report the accident."); Pl.'s Statement of Material Facts (Docket No. 35) ¶¶ 1-2 (same).) Accordingly, the factual issue of whether an accident occurred and whether damage resulted (and how much damage) is not genuinely disputed in the record.

3

violation. Mr. Fiore, however, was not cooperative and became agitated as he questioned Sergeant Smith's right to inspect the documents. The communication between the two men deteriorated. Mr. Fiore became belligerent, and Sergeant Smith said his suspicions that Mr. Fiore had something to hide were heightened by Mr. Fiore's behavior and the facts known to Sergeant Smith at the time. Not only had Mr. Fiore left the scene of an accident (something that, in Sergeant Smith's experience, was unusual for a truck driver), but he was attempting to prevent Sergeant Smith from inspecting the truck's documentation. In addition, his agitated state concerned the trooper.

At that point, Sergeant Smith arrested Mr. Fiore for leaving the scene of the accident. Incident to Mr. Fiore's arrest, Sergeant Smith, knowing that the truck would be towed, conducted a routine inventory search of the truck to record valuables in the truck. In his search he found two bags of pills containing twenty-four different medications. Nine of the medicine bottles indicated that the drugs could cause dizziness or otherwise impair the ability to drive.

Sergeant Smith conducted a number of field sobriety tests on Mr. Fiore, all of which Mr. Fiore failed.[5] As a result, Sergeant Smith arrested Mr. Fiore for DUI (Driving Under the Influence). Sergeant Smith also arrested Mr. Fiore for other minor offenses.

After the arrest, Sergeant Smith, who knew the truck would be impounded, asked Mr. Fiore for a number to call about the truck. According to Sergeant Smith, he called as a courtesy to the company in charge of the truck to let it know what had happened, where the truck was

---

[5]That day, THP Sergeant Jimmy Whitt responded to Sergeant Smith's call for assistance. Sergeant Whitt saw the bottles of medications and witnessed the field sobriety tests that Sergeant Smith was giving to Mr. Fiore. His affidavit testimony corroborates Sergeant Smith's testimony on that matter. (See Aff. of Jimmy Whitt (Docket No. 31-2).)

4

located, and how to recover the truck. When Sergeant Smith made the call, he got an answering machine, so he left a message. He did not make any further calls and did not direct anyone else to call the number provided by Mr. Fiore.

Sergeant Smith had never met Mr. Fiore before the date of the accident and knows nothing about Mr. Fiore or his business. He has not had any communications with any of Mr. Fiore's clients, employers, or anyone else regarding Mr. Fiore and his business.

After Sergeant Smith had arrested Mr. Fiore, left a telephone message with the entity whose number Mr. Fiore had provided, and filed charges against Mr. Fiore, Mr. Fiore lost his job and insurance on this truck which "effectively put him out of the truck driving profession." (Pl.'s Statement of Material Facts (Docket No. 35) ¶ 15.) A later toxicology test for alcohol and intoxicating drugs showed that Mr. Fiore was not under the influence. All charges against Mr. Fiore were eventually dismissed.

## ANALYSIS

Defendant Russell Smith has moved for summary judgment on all of the Plaintiff's claims. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The court must view the factual evidence and draw reasonable inferences in favor of the non-moving party. National Enters., Inc. v. Smith, 114 F.3d 561, 563 (6th Cir. 1997) (citing Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The court then

decides "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

**Section 1983 Claim and the Defense of Qualified Immunity**

The doctrine of qualified immunity provides federal and state employees "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). An officer is entitled to qualified immunity if he was performing a discretionary function and his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The qualified immunity analysis has two prongs. Under the first prong, the court must determine whether the official violated a constitutional or statutory right. Ashcroft v. al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2080 (2011). Under the second prong, the court determines whether the right violated was "clearly established" at the time of the violation. Id. The court may choose the order in which to analyze the two prongs. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

For the reasons set forth below, the court finds that Sergeant Smith had probable cause to arrest Mr. Fiore for leaving the scene of an accident, so no constitutional violation occurred. Accordingly, Sergeant Smith is entitled to qualified immunity, and his motion for summary

6

judgment on the Section 1983 claim is GRANTED.[6]

**A Warrantless Arrest is Constitutional if it was Supported by Probable Cause.**

On the day of the accident, Sergeant Smith arrested Mr. Fiore without a warrant. Sergeant Smith determined that Mr. Fiore had violated Tennessee law prohibiting him from leaving the scene of the accident. A commercial truck driver involved in a traffic accident has at least two obligations. First, he must provide his name, address, registration papers, and driver's license to the other driver. Second, where the collision caused more than $400 worth of damage, he may not leave the scene of the accident. See Tenn. Code Ann. §§ 55-10-103, 55-10-102(b)(2), 55-10-101(c). When Sergeant Smith determined that Mr. Fiore had violated that portion of Tennessee law, he was required to take Mr. Fiore into custody rather than issuing a criminal citation because Mr. Fiore was a non-resident and the officer was not allowed to release the driver on his own recognizance. See Tenn. Code Ann. § 55-50-703 (requiring officer to take driver into custody rather than issue a citation if the driver is a non-resident and has left the scene of an accident). Mr. Fiore contends that the warrantless arrest violated his Fourth Amendment right to be free from unreasonable seizures because Sergeant Smith lacked probable cause to arrest Mr. Fiore.

A warrantless arrest is "constitutionally problematic only in the absence of probable cause." Hoover v. Walsh, 682 F.3d 481, 499 (6th Cir. 2012) (citing Hayes v. Florida, 470 U.S. 811, 815-16 (1985)). See also Fox v. DeSoto, 489 F.3d 227, 235-36 (6th Cir. 2007) ("A warrantless arrest by an officer is reasonable under the Fourth Amendment when the arrest is in

---

[6]Because the court finds that Sergeant Smith's actions were constitutional, the court need not analyze the facts under the "clearly established" prong.

public and there is probable cause to believe that a criminal offense has been or is being committed."). The Sixth Circuit defines "probable cause" as "'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" Hoover, 682 F.3d at 499 (quoting Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir. 1998)).

The test to determine whether the officer had probable cause is an objective one. Fox, 489 F.3d at 236. Accordingly, the officer's subjective reasons and motives play no role in the analysis. Id. The court, considering the circumstances and all of the facts known to the officer at the time of the arrest, must determine whether a prudent officer, in the same circumstances and knowing the same facts, could reasonably conclude that the person arrested had committed or was committing a crime. Hoover, 682 F.3d at 499; Fox, 489 F.3d at 236 ("[T]he existence of probable cause 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'") (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)).

**Sergeant Smith Had Probable Cause to Arrest Mr. Fiore.**

Under the above-stated standards, the court, viewing the facts in a light most favorable to Mr. Fiore, must determine whether Sergeant Smith was justified in his belief that Mr. Fiore had probably committed or was committing a crime. Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988). Based on the record before the court, the court finds that, under all the circumstances and facts known to Sergeant Smith at the time of arrest, he had probable cause to arrest Mr. Fiore for leaving the scene of an accident.

There is no dispute that the accident occurred, that Mr. Fiore was involved in the accident, that damage to the car appeared to exceed $400.00, and that Mr. Fiore left the scene of

8

the accident. In addition, Mr. Fiore, before leaving the scene, did not present his registration papers or his driver's license to Ms. Caldwell despite her request that he do so. Sergeant Smith was aware of all of those facts.

When Sergeant Smith pulled Mr. Fiore over, he learned that Mr. Fiore was a non-resident. Mr. Fiore admitted to Sergeant Smith that he was involved in the accident and that he had left the scene of the accident. Nothing more was needed to support the arrest. Sergeant Smith had ample probable cause.

Mr. Fiore emphasizes the fact that the charges were ultimately dismissed. But this fact does not advance Mr. Fiore's Fourth Amendment claim. "A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988).

For the foregoing reasons, Sergeant Smith is entitled to qualified immunity because the arrest was not a violation of Mr. Fiore's Fourth Amendment rights.[7]

**State Tort Claims**

### Interference With a Business Relationship

Mr. Fiore contends that Sergeant Smith "made at least one phone call" to Mr. Fiore's employer and told the employer that Mr. Fiore had been arrested. (Pl.'s Statement of Material Facts (Docket No. 35) at ¶ 14.) As a consequence, Mr. Fiore contends, he "lost his job and insurance on his truck which has effectively put him out of the truck driving profession." (Id. ¶ 15.) Mr. Fiore also contends that Sergeant Smith unsuccessfully brought the same criminal

---

[7]Because the court finds that the initial arrest was constitutional, the court does not reach the issue of whether the other bases for arrest were supported by probable cause.

9

charges three different times, all in an effort to injure him and interfere with his employment relationship.

To survive a motion for summary judgment on a claim for interference with an existing business relationship, Mr. Fiore must present evidence sufficient to send the claim to a jury, and to do that, he must submit evidence to support of each of the tort's five elements:

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;

(2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general;

(3) the defendant's intent to cause the breach or termination of the business relationship;

(4) the defendant's improper motive or improper means; and finally,

(5) damages resulting from the tortious interference.

Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis and internal citations omitted).

Based on the existing record, the court finds that Mr. Fiore has not presented any evidence that Sergeant Smith had anything more than a "mere awareness of the plaintiff's business dealings with others in general." See id. As Sergeant Smith stated in his affidavit,

> I had never met Mr. Campofiore before the date of his arrest and I know nothing about him or his business. I do not know who he works for and I do not know who his clients are. I do not know what his routes are, when he drives, or any information about his work at all. I have not had any communication with any of plaintiff's clients, employers, or anyone else regarding plaintiff and his business.

(Aff. of Russell Smith (Docket No. 31-1) at ¶ 11.) Nothing in the record contradicts Sergeant Smith's statement.

10

Moreover, Mr. Fiore has presented no evidence that Sergeant Smith had an intent to cause a breach of Mr. Fiore's business dealings.[8] And nothing in the record suggests that Sergeant Smith had an improper motive to interfere or that he made that telephone call with the "predominant purpose" of injuring Mr. Fiore. Id. at 701 n.5. Sergeant Smith said that he made the call as a courtesy to

> the company/entity in charge of the truck in order to let the company/entity know what had happened, where the truck is located and how the truck should be recovered. All I got was an answering machine, so I left a message. I did not call anyone else and I did not direct anyone else to call. I did not receive any calls asking about Mr. Campofiore or his truck.

(Smith Aff. ¶ 10.) Finally, the single telephone call during which Sergeant Smith left a message certainly does not rise to the level of "improper means."[9]

Because Mr. Fiore has presented no evidence upon which a reasonable jury could find for him on the second, third, and fourth elements of the tort, Sergeant Smith is entitled to summary judgment on Mr. Fiore's state law claim of intentional interference with a business relationship.

---

[8]Mr. Fiore suggests that intent has been sufficiently established because Sergeant Smith unsuccessfully brought the same charges against Mr. Fiore three times. This evidence does not satisfy Mr. Fiore's burden. First, the record shows that Sergeant Smith was operating under the direction of the district attorney. Second, the district attorney advised Sergeant Smith that the charges needed to be modified to correct procedural mistakes. And even if the evidence could nudge the intent element over the proof threshold, Mr. Fiore's failure to present evidence that Sergeant Smith had anything more than a "mere awareness of the plaintiff's business dealings with others in general" defeats his claim for intentional interference with a business relationship.

[9]"Improper means" is defined as "means that are illegal or independently tortious, . . . violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition." Trau-Med, 71 S.W.3d at 701 n.5.

**False Arrest and False Imprisonment**

A common element of the torts of false arrest and false imprisonment is failure to justify the custody. To establish a claim for false imprisonment, the plaintiff must establish, among other things, that the defendant acted without probable cause. Brown v. SCOA Indus., Inc., 741 S.W.2d 916, 919-20 (Tenn. Ct. App. 1987) (emphasis added; internal citations omitted). Tennessee courts treat the tort of false arrest in the same fashion. See Coffee v. Peterbilt of Nashville, Inc., 795 S.W.2d 656, 659, 660 (Tenn. 1990) (determining whether probable cause supported the arrest in a case alleging false arrest and false imprisonment); McLaughlin v. Smith, 412 S.W.2d 21, 26 (Tenn. Ct. App. 1966) (applying probable cause analysis in context of false arrest claim).

Mr. Fiore alleges that Sergeant Smith committed both of these torts by making an unjustified arrest. But, as the court has already found, Sergeant Smith's arrest of Mr. Fiore for leaving the scene of an accident was supported by reasonable cause. Accordingly, Mr. Fiore's claims for false arrest and false imprisonment necessarily fail as a matter of law.

**ORDER**

For the reasons set forth above, Defendant Russell Smith's Motion for Summary Judgment (Docket No. 31) is GRANTED. The Clerk of the Court is hereby directed to issue a final judgment in favor of Defendant Russell Smith and to close the case.

SO ORDERED this 31st day of October, 2013.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge